IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KAY ANN NABIS-SMITH, | ) Civil No.: 6:13-cv-01427-JE |
| Plaintiff, | ) OPINION AND ) ORDER |
| v. | ) |
| CAROLYN A. COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

Brent Wells
Harder Wells Baron & Manning, PC
474 Willamette Street, Suite 200
Eugene, OR 97401

James W. Moller
8655 SW Citizens Dr., Suite 104
Wilsonville, OR 97070

   Attorneys for Plaintiff

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

OPINION AND ORDER – 1

Jeffrey E. Staples
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

Lars J. Nelson
Social Security Administration
Office of the General Counsel
1961 Stout St., Ste. 4169
Denver, CO 80294-4003

    Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Kay Ann Nabis-Smith brings this action pursuant to 42 U.S.C §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under the Social Security Act (the Act).  Plaintiff seeks an Order remanding the action to the Social Security Agency (the Agency) for an award of benefits. In the alternative, Plaintiff requests that the Court remand for further proceedings.

For the reasons set out below, the Commissioner's decision is affirmed.

## Procedural Background

Plaintiff filed her applications for SSI and DIB on January 7, 2010, alleging she had been disabled since January 1, 2000.

After her claims had been denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

On April 30, 2012, a hearing was held before Administrative Law Judge (ALJ) Ted Neiswanger.  Plaintiff and Nancy Bloom, a Vocational Expert (VE), testified at the hearing.

In a decision dated May 8, 2012, ALJ Neiswanger found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on June 17, 2013, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1967 and was 44 years old at the time of the ALJ's decision. She graduated from high school, has a college education, and has past relevant work as a teacher.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

**Medical Record and Testimony**

Like the parties, I will not summarize the medical record and testimony separately, but will instead address relevant portions of that evidence in the discussion below.

**ALJ's Decision**

As an initial matter, the ALJ found that Plaintiff last met the requirements for insured status on December 31, 2005.

At the first step of the disability assessment process, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.

At the second step, the ALJ found that Plaintiff had the following "severe" impairments: post-traumatic stress disorder (PTSD), adjustment disorder, generalized anxiety disorder, vascular dementia, irritable bowel syndrome (IBS), and mild sleep apnea.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform less than the full range of sedentary work. He found that Plaintiff's mental impairments narrowed the range of sedentary work that Plaintiff could do and that

> [while] she is able to be around other employees, due to anxiety, her interaction with them should be limited to a superficial level, and she is unable to work at all with the general public; due to memory difficulties, she is restricted to basic unskilled work tasks, and would not be able to reliably perform production work, but could perform goal oriented work.

OPINION AND ORDER – 5

In assessing Plaintiff's RFC, the ALJ concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the limitations and capabilities set out above.

Based upon the testimony of the VE, at the fourth step the ALJ found that Plaintiff could not perform any of her past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. The ALJ cited laundry sorter, semi-conductor wafer breaker, and nut sorter as examples of the work Plaintiff could perform. Based upon the conclusion that Plaintiff could perform such work, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred at Step Five of the disability analysis process both in terms of identifying the "other work" that Plaintiff was capable of performing and in finding that such work exists in the national economy in significant numbers.

### I. ALJ's Identification of "Other Work"

As a preliminary matter, the parties agree that the ALJ's identification in his written decision of "laundry folder" as a job that Plaintiff could perform given her RFC was a scrivener's error. Laundry folder was a job identified by the VE in response to one of the ALJ's hypotheticals concerning an individual who was capable of performing light work. "Addresser" was a job identified by the VE in response to a hypothetical involving an individual capable of sedentary work, the exertional category that is consistent with Plaintiff's RFC. In his written decision, the ALJ refers to "laundry folder" by name and number of jobs in the local and national economy but cites the Dictionary of Occupational Titles (DOT) code for "addresser." Because the addresser occupation was identified by the VE, its DOT code was cited by the ALJ, and the number of addresser jobs in the national and local economy exceeds those of laundry folder, I agree that the ALJ's reference to laundry folder was scrivener's error and conclude that such error was harmless.

OPINION AND ORDER – 7

At the hearing, the ALJ presented a series of hypotheticals to the VE each describing an individual of Plaintiff's age and education. The first hypothetical asked the VE to further assume that the individual was restricted to light exertion, detailed but not complex work tasks, superficial interaction with other employees and no interaction with the general public. The ALJ clarified that he interpreted "detailed but not complex work tasks" as meaning semi-skilled work, or work with a specific vocation preparation (SVP) level of 4.[1] Based on this hypothetical the VE testified that Plaintiff would be unable to perform her past relevant work as a teacher but could perform work such as motel cleaner, packing line worker, and electronics worker.

The second hypothetical asked the VE to assume all the same factors, abilities and limitations as the first hypothetical except that the individual would be limited to sedentary level work. The VE testified that such an individual could perform work as an addresser, semiconductor wafer breaker, and nut sorter. In response to inquiry from the ALJ, the VE testified that her testimony was consistent with the DOT and this was a representative and not exhaustive list of the work the hypothetical individual could perform.

The ALJ then asked the VE to assume all the same factors of the first hypothetical including a limitation to light exertion work but to consider a hypothetical individual who was restricted to basic unskilled work tasks and "due to cognitive limitations, the individual would not be able to reliably perform a work – production rate-paced job. In effect, assembly line work." Tr. 69. In response to this third hypothetical, the VE testified that such an individual could perform work as a laundry folder, bakery line worker and motel cleaner. The ALJ then

---

[1] Each job description in the DOT includes within its definition trailer an SVP component and a general education development (GED) component. DOT, App'x C, available at 1991 WL 688702. A job's SVP is focused on "the amount of lapsed time" it takes for a typical worker to learn the job's duties. Id. A job's SVP is used by the Agency in classifying an occupation as unskilled, semi-skilled, or skilled. 20 C.F.R. § 416.968.

inquired why the bakery line worker job would not be considered a production rate pace job. The VE testified that it was classified as light because of the standing involved but that it only required occasional reaching and handling.

In his fourth hypothetical, the ALJ asked the VE to consider the same factors as the third hypothetical except that the individual would be restricted to sedentary work. The VE testified that such an individual could perform the previously identified jobs of addresser, semiconductor wafer breaker and nut sorter. The VE went on to testify that "by definition, sedentary does not require production-type work." Tr. 71.

Based upon the VE's testimony the ALJ concluded that Plaintiff retained the capacity to perform other work. As noted above, the ALJ cited laundry sorter (but is assumed to have intended to list addresser), semiconductor wafer breaker, and nut sorter as examples of occupations Plaintiff could perform.

**A. "Attention to Detail"**

In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984) (citing Baugus v. Secretary, 717 F.2d 443, 447 (8th Cir.1983)). The ALJ's depiction of the claimant's limitations set out in the hypothetical must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d at 1101. If an ALJ presents a hypothetical to a VE that does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir.1988).

The ALJ is responsible for determining a claimant's RFC, which is the most the claimant is able to do, considering all of the claimant's impairments and limitations. 20 C.F.R. §§

404.1546, 416.946, SSR 96–5p. In carrying out this determination, the ALJ must consider the record as a whole, and must explain the weighing of medical evidence and testimony. Id. If the ALJ's RFC assessment is based upon the proper legal standard and is supported by substantial evidence in the record, the court should not set it aside. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff argues that the ALJ failed to include in both his RFC "summary statement" and the hypotheticals he presented to the VE a restriction from tasks that require attention to detail. The Commissioner argues that the ALJ's RFC restriction to "basic unskilled work tasks" accounts for and is actually more restrictive than a limitation to jobs not requiring an attention to detail.

Plaintiff's argument is unpersuasive. The attention to detail limitation does not appear in the RFC determination itself. Tr. 16. Furthermore, despite Plaintiff's repeated arguments to the contrary, I disagree that the ALJ's decision reflects a finding that Plaintiff had limitations in her ability to perform tasks requiring "attention to detail." In support of her argument that an "attention to detail" limitation should have been included, Plaintiff cites a portion of the ALJ's discussion that follows his RFC determination. The ALJ noted that concerns regarding Plaintiff's anxiety were addressed by "not requiring *attention to detailed tasks, or even more than unskilled work*." Tr. 25 (emphasis added). Here, the ALJ does not, as Plaintiff repeatedly asserts, use the words "attention to detail." Rather, he references "detailed tasks." The two concepts are distinct. In the context of his preceding sentence, which describes a restriction to "detailed work tasks," his qualification of "attention to detailed tasks" with the phrase "or even more than unskilled work," and, in the absence of any reference to "attention to detail" in any

OPINION AND ORDER – 10

other portion of the ALJ's decision, there is simply no support for the conclusion that the ALJ found Plaintiff limited to jobs not requiring attention to detail.

Based upon my review of the record and the ALJ's decision I conclude that the ALJ's RFC assessment is supported by substantial evidence. His decision set out a lengthy and thorough explanation of his weighing of the medical evidence and testimony. Plaintiff does not challenge those findings. The ALJ's RFC determination adequately set out restrictions consistent with those limitations which he concluded were supported by the record.

The ALJ restricted Plaintiff to no more than basic, unskilled work. Unskilled work requires performance of simple duties that can be learned in a short time and requires little or no judgment. See 20 C.F.R. §§404-1568(a), 416.968(a). Basic work activities include understanding, remembering, and carrying out simple instructions and making simple, work-related decisions. See SSR 96-9P at *9. In restricting Plaintiff to basic, unskilled work, the ALJ adequately accounted for any difficulties with anxiety, ability to make judgments on complex work related decisions or ability to understand, remember or carry out complex instructions that were supported by Plaintiff's medical record. See Stubbs-Danielson, 539 F.3d, 1169, 1174 (9th Cir. 2008)(RFC assessment adequately sets out a claimant's restrictions if it is consistent with the limitations identified in the medical record).

### B. "Production-rate pace"

Plaintiff contends that the ALJ's conclusion that she could work as an addresser, semiconductor wafer breaker or nut sorter was unsupported by the evidence because it was based upon the VE's erroneous testimony that these positions did not involve production work because they were sedentary.

As noted above, the ALJ posed a hypothetical involving an individual who was restricted to basic unskilled work tasks and "due to cognitive limitations, the individual would not be able to reliably perform a work – production rate-paced job. In effect, assembly line work." Tr. 69. In response, the VE cited three light exertion level jobs that required only occasional reaching and handling. Tr. 70. The ALJ then asked the VE to consider the same non-exertional limitations but also restrict the hypothetical individual to sedentary work. Tr. 71. The VE cited the addresser, semiconductor wafer breaker and nut sorter jobs and testified that "by definition, sedentary does not require production-type work." Id.

### 1. Standards

Social Security Ruling 00–4p states that the Agency relies "primarily on the DOT ... for information about the requirements of work in the national economy. We use these publications at Steps 4 and 5 of the sequential evaluation process." SSR 00–4p, available at 2000 WL 1898704 at *2. Although the occupational evidence provided by a VE should generally be consistent with the occupational information supplied by the DOT, neither the DOT nor the VE evidence automatically "trumps" when there is a conflict. Id. As part of the ALJ's duty to fully develop the record, the ALJ must, on the record, ask the VE if the evidence he or she has provided conflicts with the DOT. Id. at *2, *4. When there is an "apparent unresolved conflict" between the VE evidence and the DOT, it is the duty of the ALJ to elicit a reasonable explanation for the conflict before relying on the VE's evidence. Id.; see also Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir.2007). Failure to make such an inquiry is procedural error but such error may be harmless if there is no actual conflict between the VE's testimony and the DOT, "or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts." Massachi, 486 F.3d at 1153.

The Social Security Administration ("SSA") classifies the physical exertion requirements of various jobs as "sedentary, light, medium, heavy, [or] very heavy." 20 C.F.R. § 404.1567." Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008). These terms have the same meaning as they have in the DOT. Id. The DOT defines "sedentary" jobs as involving "[e]xerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. . . ." DOT, App'x C, available at 1991 WL 688702. "Light" work is defined as "exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects . . . Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: . . . when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." Id.

## 2. Analysis

Consistent with SSR 00–4p, the ALJ here explicitly asked the VE if her testimony was "consistent with the [DOT]." Tr. 68, 69. The VE testified that it was. Id. Plaintiff, who was represented by counsel at the administrative hearing, did not raise an issue at the hearing regarding any potential conflict between the VE's testimony and the DOT's definition of the relationship between sedentary exertion work and production-type work. However, it is the obligation of the ALJ to "determine whether the expert's testimony deviates from the Dictionary of Occupational Titles and whether there is a reasonable explanation for any deviation." Massachi, 486 F.3d at 1153. An ALJ's duty to not simply rely on the VE's testimony that no conflicts exist is consistent with Supreme Court language that notes that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts

and develop the arguments both for and against granting benefits...." Sims v. Apfel, 530 U.S. 103, 111 (2000).

Plaintiff now contends that there is, in fact, an inconsistency between the VE's testimony and the DOT. She argues that because the DOT rates a job as light work "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of the materials is negligible," the DOT's distinction between sedentary and light work is premised solely on physical demands. Thus, it is a limited definition that cannot support the VE's testimony that sedentary work is never production work. Plaintiff contends that it is the requirement of "constant pushing and/or pulling of materials," that elevates otherwise sedentary production-rate pace work into the light work category. She asserts that the ALJ's restriction to no production work was based on concerns regarding Plaintiff's cognitive limitations to working at a production pace, not the ability to perform "constant pushing and/or pulling of materials." Plaintiff thus appears to argue that because the DOT's distinction between sedentary and light work is premised on physical demands and the ALJ's RFC restriction from production work was premised on Plaintiff's cognitive limitations, the VE's interpretation of the DOT was erroneous.

Plaintiff's arguments are unavailing. The DOT classifications of sedentary and light work are strength ratings. They are referred to in the DOT as "The Physical Demands Strength Rating" and reflect the estimated overall strength requirement of a job. DOT Appendix C. Sedentary work demands the individual exert up to 10 pounds of force occasionally and/or a negligible amount of force frequently. Id. Light work demands the individual exert up to 20 pounds of force occasionally, up to 10 pounds of force frequently, and/or a negligible amount of force constantly. Id. Thus the definitions provide both the level of force required (10 pounds, 20

pounds, negligible) and the *pace* at which that force must be applied (occasionally, frequently, constantly). [2] In the definition of light work, the DOT accounts for the demands of the constant exertion of force of even a negligible amount by noting that "[t]he constant stress and strain of maintaining a production rate pace . . . can be and is physically demanding of a worker even though the amount of force exerted is negligible." Id. No such explanation is attached to the definition of sedentary work. Furthermore, the difference between sedentary work and light work in regard to exerting negligible force is the pace at which the individual must exert that force, i.e. frequently versus constantly. Id. It was not, therefore, unreasonable for the VE to conclude based on the DOT that, without the requirement for the constant exertion of even negligible force, sedentary work is not, by definition, production pace work. Plaintiff points to no evidence or legal authority that contradicts the VE's interpretation.

Plaintiff correctly notes that the nut sorter job identified by the VE does involve the use of a conveyor belt.[3] She argues that this is "by all appearances – a description of production rate pace work." Pl. Reply at 5. She notes that the Commissioner's Response cites to Espinoza v. Astrue, 2013 WL 327889 (C.D. Cal. 2013) in which the court found a conflict between a position involving a conveyor belt and the ALJ's RFC precluding "work with fast-paced production requirements and assembly line work." However, in Espinoza, the ALJ's hypothetical to the VE

---

[2] "Occasionally is defined as an activity or condition that exists up to 1/3 of the time, "frequently" is an activity or condition that exists 1/3 to 2/3 of the time and "constantly" is defined as an activity or condition that exists 2/3 or more of the time. DOT App. C.

[3] the DOT describes the nut sorter job as involving the following activity:

"[r]emoves defective nuts and foreign matter from bulk nut meats: Observes nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks. Places defective nuts and foreign matter into containers. May be designated according to kind of nut meat sorted as Almond Sorter (can. & preserv.); Peanut Sorter (can. & preserv.)." DOT 521.687-086 available at 1991 WL 674226.

explicitly precluded work with a conveyor belt and the DOT definition of the laundry worker job provided by the VE specifically referenced work with conveyor belts. The court found that the ALJ failed to question the VE as to whether there was a conflict between the DOT and the RFC or seek an explanation for the apparent inconsistency. Id. at *4.

Here, neither Plaintiff's RFC nor the hypotheticals posed to the VE included a restriction from work with conveyor belts. As discussed above, the ALJ properly questioned the VE as to whether there was conflict between her testimony and the DOT. The VE testified that her testimony did not conflict and provided a reasonable explanation supporting her identification of those jobs which she concluded were within an RFC precluding production work. The ALJ was thus entitled to rely on the VE's testimony that Plaintiff could perform the requirements of the nut sorter position. Massachi, 486 F.3d at 1154 n .19.

In any event, I conclude that any error as to Plaintiff's ability to perform the nut sorter job in light of its requirement that work be performed with a conveyor belt was harmless. Neither of the remaining two positions identified by the VE and the ALJ as within Plaintiff's RFC involves use of a conveyor belt. While Plaintiff makes the statement that the jobs provided by the VE required a "production rate pace work" she provides no evidence to support such an assertion. For the reasons discussed above, I conclude that the VE's testimony that Plaintiff was able to perform the addresser and semiconductor wafer breaker jobs constituted substantial evidence. I also conclude, as discussed below, that the remaining two jobs identified by the VE exist in significant numbers in the national and local economy.

### III. "Significant Numbers" in the National or Local Economy

Plaintiff contends that if "it is determined that she is unable to work as a semiconductor wafer breaker . . . then her employment options will be exceedingly eroded." Pl. Reply at 9.

Plaintiff acknowledges that there is no bright line test for determining what constitutes a "significant number of jobs," Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1478 (9th Cir.1989), and argues that, on remand, the ALJ will have the opportunity to consider the issue.

These conclusory assertions to not rise to the level of argument supporting an assignment of error and thus are deemed waived. See, e.g., Carmickle v. Comm'r, Soc. Sec. Admin., 553 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (courts will not consider matters not specifically argued in opening brief). In any event, in Barker, the Ninth Circuit gave tacit approval to

> [d]ecisions by district courts within this circuit are also consistent with the Secretary's finding in this case. See, e.g., Salazar v. Califano, Unemp.Ins.Rep. (CCH, para. 15,835) *1479 (E.D.Cal.1978) (600 jobs is significant number); Uravitch v. Heckler, CIV–84–1619–PHX-PGR, slip op. (D.Az. May 2, 1986) (even though 60–70% of 500-600 relevant positions required experience plaintiff did not have, remaining positions constitute significant number).

Barker, 882 F.2d at 1478-79. The Ninth Circuit continues to cite to Barker with approval, (see Gutierrez v. Commissioner of Social Security, 740 F.3d 519 (9th Cir.2014)); despite its 2012 decision in Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir.2012) that held that 135 regional jobs do not suffice as a "significant number." Here, the number of jobs available, even excluding the nut sorter position, exceeds 82,000 in the national economy and approach nearly 900 in the Oregon economy. Accordingly, the ALJ did not err in concluding that Plaintiff could perform jobs existing in significant numbers in the national economy. As discussed above, the ALJ's conclusion that Plaintiff could perform the work identified by the VE was supported by substantial evidence in the record and was not based upon harmful error. Accordingly, the Commissioner's decision is affirmed.

OPINION AND ORDER – 17

**Conclusion**

For the reasons set out above, the Commissioner's decision is AFFIRMED and this action is DISMISSED with prejudice.

DATED this 9th day of November, 2015.

                                                /s/ John Jelderks
                                                John Jelderks
                                                U.S. Magistrate Judge